UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CLARENCE SMITH,

    Plaintiff,

       v.                                        No. 3:14-cv-1752(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## **RECOMMENDED RULING ON PENDING MOTIONS**

    Plaintiff Clarence Smith has filed this appeal of the adverse decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 21]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 32]. The undersigned heard oral argument in this case on December 17, 2015. For the reasons set forth below, the Court recommends that the decision of the Commissioner should be affirmed.

## **Legal Standard**

    The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

1

**Background**

Plaintiff has alleged a disability onset date of October 1, 2004. His applications were denied initially and upon reconsideration. A hearing was held before Administrative Law Judge Ryan A. Alger (the "ALJ") on March 19, 2013. The ALJ issued an unfavorable decision on May 31, 2013. The Appeals Council ("AC") denied review[1], making the ALJ's decision the final decision of the Commissioner. This action followed.[2]

**The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 14). At step two, the ALJ found the following severe impairments: spinal stenosis and herniated spinal discs, status post-surgical repair; depression; and cocaine abuse, in partial remission. (R. 14). At step three, the ALJ found that these impairments, alone or in combination, did not meet or equal the severity of one of the listed impairments. (R. 14-17). The ALJ then found that Plaintiff retained the following residual functional capacity: [3]

---

[1] Plaintiff submitted new evidence to the Appeals Council, which it declined to consider.

[2] In accordance with the Court's scheduling order, Plaintiff's brief set forth a medical chronology. The parties were thereafter ordered to make a good faith attempt to stipulate to the facts of this case. [Doc. # 28]. Apparently, the parties were unable to stipulate to the facts, and so, in accordance with the Court's order, the Commissioner filed an amended brief responding to Plaintiff's medical chronology. [Doc. # 32]. At oral argument, counsel were asked to agree to the facts as set forth in both briefs. Surprisingly, counsel were unable to do so; Plaintiff's counsel, without providing specific examples of disagreement, broadly asserted an objection to the characterization of some of the facts in Defendant's brief. The parties were, however, able to stipulate to the general medical chronology in the case. Accordingly, the Court adopts and incorporates by reference herein the general medical chronology. Any facts germane to the Court's analysis of the arguments at issue will be set forth in the discussion section of this Ruling. Finally, the Court wishes to express its disappointment that the parties were unable to work together to file a fact stipulation; a general statement of which doctors Plaintiff saw, when, for what, and what those records say seems to elude the ability for characterization.

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

>Plaintiff can perform light work except he can remember and carry out at most simple instructions.

(R. 17-19).  At step four, the ALJ found Plaintiff had no past relevant work.  (R. 19).  Finally, at step five, the ALJ used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter the "Grids") to determine that there were sufficient jobs Plaintiff could perform.  (R. 19).  Accordingly, the ALJ found Plaintiff to be not disabled.

## Discussion

Plaintiff raises several arguments, which the Court will review in order of the emphasis given at oral argument.

1. Weighing of opinion evidence

Plaintiff first argues that the ALJ improperly weighed the opinion evidence.  There are several opinions in the record Plaintiff maintains were weighed contrary to the treating physician rule.  First, Dr. Hill, the state agency psychological consultant, issued an opinion on October 5, 2011 as to Plaintiff's ability to function mentally.  The ALJ gave great weight to that opinion, except for the finding that claimant had at least one episode of decompensation, because Dr. Hill did not explain which hospital visit constituted such an episode, and there was no other evidence in support of this finding.

Dr. Buchbinder, Plaintiff's treating podiatrist, gave an opinion dated December 22, 2012.  He opined that Plaintiff could only stand for 30 minutes at one time, would need to frequently elevate his legs during an eight hour workday, and would be unable to walk a block at a reasonable pace on rough or uneven surfaces, walk enough to shop or bank, or climb a few steps at a reasonable pace with the use of a single handrail.  He further opined that Plaintiff's pain was severe.  The ALJ accorded the opinion little weight because it was inconsistent with the findings

from the same time period of Dr. Spiro (a treating source who had seen Plaintiff more frequently) and physician's assistant Chu indicating Plaintiff had practically no impairment.

Dr. Kogan authored a medical source statement on March 17, 2011 in which he observed that without a cane Plaintiff ambulates independently with slow, short steps, but otherwise stable independent gait.  In a second statement from September 15, 2011, Dr. Kogan repeated his finding as to Plaintiff's gait, and noted that Plaintiff could perform the following work-related activities: sitting, standing, walking (with findings noted above), bending, reaching, fine finger manipulations, hearing, speaking, comprehending, and remembering and carrying out instructions.  Dr. Kogan's opinions were not in the record before the ALJ, but were provided to the AC.

Finally, Dr. Finn, on November 30, 2007, opined that Plaintiff would be unable to work for twelve months or more due to his lower back pain.  The ALJ did not address this opinion in his decision.

The treating physician rule provides that a treating source's opinion on the nature or severity of a claimant's impairments will be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record.  *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).  When a treating physician's opinion is not deemed controlling, the ALJ must consider several factors in determining how much weight it should receive.  *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).  Those factors include "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).  After considering

4

these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess,* 537 F.3d at 129.

As to Dr. Hill, Plaintiff argues that the opinion should not have been given great weight because Dr. Hill had not reviewed all of Plaintiff's mental health records. Plaintiff has not, however, made a sufficient showing that the evidence Dr. Hill did not review would have changed the outcome of the disability determination. Accordingly, remand is not warranted on this point. In addition, it is well established that an opinion of a non-examining doctor that is consistent with substantial evidence in the record may be afforded controlling weight. *See Cyr v. Astrue*, No. 3:10-cv-1032 CFD TPS, 2011 WL 3652493, at *11 (D. Conn. Aug. 19, 2011).

As to Dr. Buchbinder, the Court finds that the ALJ properly assessed his opinion in accordance with the required factors. *See Selian,* 708 F.3d at 418.

Plaintiff argues that Dr. Kogan's opinions, had they been reviewed by the ALJ, would have further eroded the occupational base of light work. The Commissioner responds that although the ALJ did not review Dr. Kogan's reports, Dr. Kogan's reports were considered and incorporated into the findings of Dr. Bernstein, the state agency medical consultant, whose opinion was considered by the ALJ. The Court finds that Dr. Kogan's opinions are reflected in the ALJ's findings. For example, Dr. Kogan found Plaintiff had full range of motion in his spine and extremities, and full muscle strength and sensation. (R. 1684). These findings support the finding that Plaintiff could perform the full range of light work. When an opinion submitted to the AC but not the ALJ "contradict[s] the ALJ's conclusion in important respects," that ALJ's decision will not be found to be supported by substantial evidence. *Lesterhuis v. Colvin*, 805

F.3d 83, 88 (2d Cir. 2015). Here, in contrast, the ALJ's decision is in accord with Dr. Kogan's findings. There is no error.

Finally, with respect to Dr. Finn, the Court finds no error in the ALJ's decision not to mention this opinion. It is well established that an ALJ is not required to "explicitly […] reconcile every conflicting shred of medical testimony." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981).

2. Closed Period

Plaintiff next argues that the ALJ should have considered the evidence from prior to Plaintiff's 2012 back surgery as a closed period of disability. The Court must reject this argument as Plaintiff has not pointed to substantial evidence showing he was disabled from the alleged onset date through his January 2012 surgery. A claimant "has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citing *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008)). Here, Plaintiff's perfunctory argument, without more, does not persuade the Court that the ALJ could reasonably have found that Plaintiff was disabled during the period prior to his 2012 surgery.

3. The RFC

Plaintiff next argues that the assessed RFC is not supported by substantial evidence because it does not properly account for Plaintiff's limitations in concentration, persistence, and pace.[4]

---

[4] Plaintiff additionally argues that the RFC is improper because the ALJ did not assess it on a function by function basis. This argument misses the mark. An ALJ's failure to "conduct an explicit function-by-function analysis at Step Four" regarding the functions set forth in 20 C.F.R.

6

There are numerous cases holding that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a claimant to only unskilled work sufficiently accounts for such limitations." *Bartell v. Comm'r of Soc. Sec.*, No. 5:13-cv-843 GLS/ESH, 2014 WL 4966149, at *3 (N.D.N.Y. Sept. 30, 2014) (citing cases) (holding that a limitation to "simple, repetitive work with no reading requirement" adequately accounted for claimant's moderate limitations in concentration, persistence, and pace). Further, in *Rodriguez v. Colvin*, No. 13-CV-6360 CJS, 2014 WL 3882191, at *17 (W.D.N.Y. Aug. 7, 2014), the court held that a limitation to simple instructions adequately accounted for a claimant's limitations in attention and concentration. Here, likewise, the Court finds that the limitation to simple instructions properly accounts for Plaintiff's limitations in concentration, persistence, and pace.

4. The Step Five Finding

Next, Plaintiff asserts that vocational expert ("VE") testimony was required at step five because the limitation to jobs with simple instructions erodes the unskilled occupational base. Plaintiff is mistaken.

When a claimant's nonexertional limitations "significantly limit the range of work permitted by his exertional limitations," an ALJ must not rely solely on the Grids at step five and must consult a vocational expert. *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). A nonexertional impairment "significantly limits" a claimant's range of work when it causes an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment

---

§§ 404.1545 and 416.945 is not a "per se error requiring remand." *Cichocki*, 729 F.3d at 176-77. Rather, when the ALJ's analysis "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence," the decision will stand. *Id.* at 177.

opportunity.'" *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010) (citing *Bapp* at 605-06).  The Second Circuit has held that when an ALJ finds a claimant's mental condition did not limit the ability to perform unskilled work, including carrying out simple instructions, that claimant's "nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the Medical-Vocational Guidelines was permissible."  *See id.  See also Lewis v. Astrue*, No. 3:11-cv-1163 GTS, 2012 WL 6097303, at *7 (N.D.N.Y. Dec. 7, 2012) *aff'd sub nom. Lewis v. Colvin*, 548 F. App'x 675 (2d Cir. 2013) (finding that a limitation to simple instructions, "which does not significantly limit [claimant's] capacity to perform light work," warranted reliance on the Grids at step five.).

Here, a limitation to simple instructions does not significantly limit the range of unskilled work.  "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember *simple instructions*; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Titles II & Xvi: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985) (emphasis added).  Accordingly, the ALJ was not required to call a VE in this case.

  5.  Evaluation of Plaintiff's Substance Abuse

Plaintiff further argues that that ALJ did not comply with SSR 13-2p with respect to analyzing Plaintiff's drug addiction.  Plaintiff's argument on this issue must be rejected.  In evaluating cases involving drug addiction and alcoholism ("DAA"), an ALJ is required to determine whether DAA "is a contributing factor to the determination of disability" *only when* the ALJ has found that "the claimant is disabled considering all impairments, including the

DAA." *Soc. Sec. Ruling, SSR 13-2p.; Titles II & Xvi: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA)*, SSR 13-2P (S.S.A. Feb. 20, 2013). Here, because the ALJ did not find Plaintiff to be disabled, a materiality determination was not required.

In addition, the ALJ noted that Plaintiff was not fully credible as to his allegations of severe pain, in part because he sought out narcotic pain medication but drug testing results "almost uniformly show that he was positive for cocaine, but not Percocet, heroin, or any other opiate." (R. 16). Plaintiff argues that the ALJ improperly "played doctor" in interpreting drug testing results. Drug-seeking behavior is an appropriate factor in evaluating a claimant's credibility. *See Sears v. Astrue,* No. 2:11-cv-138, 2012 WL 1758843, at *5 (D. Vt. May 15, 2012) (citing cases). Plaintiff avers that *Sears* is distinguishable because it was decided prior to the enactment of SSR 13-2p. SSR 13-2p instructs that there are no "special rules for evaluating a claimant's credibility in cases involving DAA," but that the ALJs "must not presume that all claimants with DAA are inherently less credible than other claimants." SSR 13-2p. The Court does not see any evidence that the ALJ made such a presumption in this case. Further, even if the ALJ incorrectly interpreted drug results, medical records do show that Plaintiff was "in breach of his pain management contract." (R. 454). This factor would also be a proper consideration in evaluating Plaintiff's credibility.

Finally, it is the function of the Commissioner, not this Court, to appraise the credibility of the claimant. *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (quoting *Lennon v. Waterfront Transport,* 20 F.3d 658, 661 (5th

Cir. 1994). The Court finds no reason not to defer to the ALJ's credibility assessment in this case.

6. <u>New Evidence</u>

Lastly, Plaintiff argues that the additional medical records he submitted to the AC on October 29, 2013 should have been considered by the AC. The new evidence consisted of mental health records from 2011 from Connecticut Renaissance Center and reports of treating psychiatrist Dr. Kahn. Dr. Kahn opined that Plaintiff's symptoms meet the requirements of Listing 12.04 (affective disorders). The AC declined to consider the new evidence under 20 C.F.R. § 405.401.

> 20 C.F.R. § 405.401(c) provides as follows:
>
> If you submit additional evidence, the Appeals Council will consider the additional evidence only where it relates to the period on or before the date of the hearing decision, and only if you show that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision, and
> (1) Our action misled you;
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

C.F.R. § 405.401. The Court finds that the AC properly declined to consider the new evidence for two reasons. First, Plaintiff has not shown that the new evidence had a reasonable probability of changing the outcome of the decision. While Dr. Kahn did opine that Plaintiff met Listing 12.04, Plaintiff has not explained how this statement would have, or should have, been adopted by the ALJ. An opinion that a claimant meets a Listing and is therefore disabled is not entitled to controlling weight because it encroaches on a finding reserved to the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative."). In addition, even with Dr. Kahn's opinion, there is

substantial evidence to support the finding that Plaintiff did not meet the Listing. Particularly, Plaintiff's reported activities of daily living, as well as other opinion evidence in the record, reinforce the findings of mild restrictions in activities of daily living and social functioning, and no more than moderate limitations in concentration, persistence, and pace.

Second, Plaintiff has not shown good cause for not submitting the evidence earlier. Plaintiff argues that the records were requested as soon as his counsel became aware of their existence. The Court does not doubt the difficulty claimants and their representatives must face in requesting and compiling medical records for disability claim adjudication purposes. Even so, the mere fact that a claimant's counsel was not aware of the existence of a record does not seem to be the sort of "unusual, unexpected, or unavoidable circumstance" the regulation contemplates.

Plaintiff also argues that section 405.401 should be found invalid because it was promulgated without the proper notice and comment procedure the Administrative Procedure Act ("APA") requires. In 2009, the Social Security Administration ("SSA") proposed to eliminate part 405 of its rules which were in use in the Boston region: "We propose to use the same rules for disability claims in the Boston region that we use for disability adjudications in the rest of the country, including those rules that apply to the administrative law judge (ALJ) and Appeals Council (AC) levels of our administrative review process in parts 404 and 416 of our rules." 74 FR 63688-01 (2009). In 2011, SSA issued a final rule eliminating the Decision Review Board (DRB) portions of part 405 of its rules.[5] The final rules kept in place certain part 405 rules pertaining to hearings before the ALJ. Specifically, the rules that provide "75-day notice of a hearing and require a claimant to submit all evidence 5 days prior to his or her

---

[5] The DRB was the final step in the administrative review process in the Boston region. Under the final rules, the DRB was replaced by the AC.

hearing unless he or she shows good cause" were maintained. 76 FR 24802-01 (2011). Under the previous part 405 rules, a claimant's record was closed once an ALJ issued his or her decision, and the ALJ and the DRB could consider new evidence only under certain conditions. *Id.* In the final rules, SSA eliminated "the rule that allowed an ALJ to consider new evidence and add[ed] final section 405.401, which restricts the conditions under which the Appeals Council can accept new evidence." *Id.*

Under the APA, "an agency conducting notice-and-comment rulemaking [must] publish in its notice of proposed rulemaking 'either the terms or substance of the proposed rule or a description of the subjects and issues involved.'" *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 169 (2d Cir. 2013) (citing *Long Island Care at Home, Ltd. v. Coke,* 551 U.S. 158, 174, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007)). The generally means that "the final rule the agency adopts must be a logical outgrowth of the rule proposed." *Id.* (internal quotation marks omitted). In other words, the final rule cannot "deviate[] too sharply from the proposal." *Id.* at 169-170 (citation omitted).

Here, the Court finds that the final rule is a "logical outgrowth" of the proposal. SSA proposed to eliminate the DRB and restore the use of the AC in the Boston region, which the final rule accomplishes. SSA declined to adopt its proposal with respect to the hearing level. So, when SSA eliminated the DRB but left hearing-level part 405 rules, it needed to make changes to the AC's procedures in effect in the rest of the country to accommodate the part 405 hearing process rules that were to remain in the Boston region. What SSA did in the final rule was to modify the AC's procedure in a way that reflects the submission of evidence rules at the hearing level. An agency's "final rule need only be a logical outgrowth of the proposed rule, not an

exact replica of it." *Riverkeeper, Inc. v. U.S. E.P.A.*, 358 F.3d 174, 202 (2d Cir. 2004) (internal quotation marks omitted).  The Court finds that this standard is met here.

Plaintiff also argues that section 405.401 is inconsistent with the Social Security Act because enforcement of a rule limiting evidence that can be produced to the AC is an improper narrowing of the Commissioner's duty to develop the record.  The Court disagrees.  The AC rules in effect outside of the Boston region also allow the AC to not accept additional evidence when it is not new, material, or related to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 976(b), 416.1470(b), 1476(b).

## Conclusion

After a thorough review of the administrative record and consideration of all of the arguments raised by Plaintiff, the Court concludes that the ALJ did not commit any legal errors and that his decision is supported by substantial evidence.  Accordingly, the Court recommends that Defendant's Motion to Affirm the Decision of the Commissioner [Doc. # 32] should be granted and that Plaintiff's Motion to Reverse [Doc. # 21] should be denied.

This is a Recommended Ruling.  *See* Fed. R. Civ. P. 72(b)(1).  Any objection to this Recommended Ruling must be filed within 14 days after service.  *See* Fed. R. Civ. P. 72(b)(2).  In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part.  *See* Fed. R. Civ. P. 72(b)(3) and D. Conn. Local  Rule 72.1(C)(1) for Magistrate Judges.

SO ORDERED, this  4th  day of January, 2016, at Bridgeport, Connecticut.

                                */s/ William I. Garfinkel*
                                WILLIAM I. GARFINKEL
                                United States Magistrate Judge