# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE SMITH,<br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>Defendant. | No. 3:14-cv-1752 (SRU) |

## RULING ON THE PLAINTIFF'S OBJECTION TO THE RECOMMENDED RULING

Plaintiff Clarence Smith appealed from the adverse decision of the Commissioner of Social Security denying his application for a period of disability insurance benefits and supplemental security income. On January 4, 2016, U.S. Magistrate Judge William I. Garfinkel issued a recommended ruling (the "Recommended Ruling) recommending that the decision of the Commissioner be affirmed. (doc. 39) On January 14, 2016, Smith timely filed an objection to the Recommended Ruling (the "Objection"). (doc. 40) On January 22, 2016, the Commissioner filed a reply to Smith's objections (the "Reply"). (doc. 41).

For the reasons set forth below, Smith's objections are overruled and the Recommended Ruling is adopted in full.

## I.    Background

The court assumes the parties' familiarity with the underlying facts. The parties were unable to stipulate to the facts of this case, but were willing to stipulate to a general medical chronology, which is incorporated in this decision by reference. (doc. 28)

## II.    Standard of Review

"In the face of an objection to a Magistrate Judge's recommended ruling, the [d]istrict [c]ourt makes a *de novo* determination of those portions of the recommended ruling to which an objection is made."  *Smith v. Barnhart*, 406 F. Supp. 2d 209, 212 (D. Conn. 2005); *see also Burden v. Astrue*, 588 F. Supp. 2d 269, 271 (D. Conn. 2008).  The court may adopt, reject, or modify, in whole or in part, the Magistrate Judge's recommended ruling. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is limited.  *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).  It is not the court's function to determine *de novo* whether the claimant was disabled.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Rather, the court must review the record to determine first whether the correct legal standard was applied and then whether the record contains substantial evidence to support the decision of the Commissioner. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).

When determining whether the Commissioner's decision is supported by substantial evidence, the court must consider the entire record, examining the evidence from both sides. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  Substantial evidence need not compel the Commissioner's decision; rather substantial evidence need only be evidence that "a reasonable mind might accept as adequate to support [the] conclusion" being challenged. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citations omitted). "Even where the administrative record may also adequately support contrary findings on

2

particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

Decisions of the Appeals Council refusing review are discretionary, and therefore "may be reviewable to the extent that [the decision] rests on an explicit mistake of law or other egregious error." *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001).

**III.    Discussion**

Smith raises six general categories of objection to Magistrate Judge Garfinkel's Recommended Ruling: (1) the ALJ erred in not calling a vocational expert, Objection at 1–5; (2) the ALJ did not properly evaluate the medical opinions in the record, Objection at 5–13; (3) the ALJ's Residual Functional Capacity ("RFC") assessment was not supported by substantial evidence, Objection at 13–17; (4) the ALJ did not comply with Social Security regulations on cases involving drug addiction and alcoholism, Objection at 17–19; (5) the Appeals Council erred by declining to consider the additional evidence Smith provided after the hearing, Objection at 19–29; (6) some of the ALJ's credibility findings were not based on substantial evidence, Objection at 29–31.

The Commissioner correctly points out that Smith's Objection fails to identify any specific portion of the recommended ruling as erroneous, and instead simply reiterates his original objections. Reply at 4 (citing *Johnston v. Colvin*, 2014 WL 1304715, at *1 (D. Conn. Mar. 31, 2014)). Accordingly, the Recommended Ruling need only be reviewed for "clear error," *id.*; however, even if Smith's Objections were reviewed under a less-exacting standard, for the reasons discussed below they would still be inadequate.

3

A.  The ALJ's Decision Not to Use a Vocational Expert

Smith asserts that the ALJ improperly declined to use a vocational expert in his Step-Five determination that jobs exist in significant numbers in the national economy that Smith could perform. Instead, he asserts that the ALJ improperly relied on the Medical-Vocational Guidelines, set out at 20 C.F.R. § 404, Subpt. P, App'x 2.

The Medical-Vocational Guidelines, also known as the "grid rules," are used to determine whether an individual with a severe impairment that does not meet a listed impairment should be considered "disabled" and therefore eligible for benefits. The grid rules direct a determination of "not disabled" when the claimant can do substantially all of the work represented by the exertional requirements in a given Table, and his age, education, and past work experience meet the criteria of the rule. *See* 20 C.F.R. §§ 404.1569; 416.969; *see also Heckler v. Campbell*, 461 U.S. 458, 468 (1983) (holding reliance on the grid rules did not conflict with the Social Security Act). If the claimant's work capacity is "significantly diminished" by nonexertional impairments, however, the ALJ should not rely on the grid rules because "they fail to take into account claimant's nonexertional impairments." *Bapp v. Bowen*, 802 F.2d 601, 605–06 (2d Cir. 1986). The Second Circuit has defined "significantly diminished" to mean "the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.*; *see also Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010) (quoting same). Accordingly, where an ALJ determines that a claimant meets all of the exertional requirements for a given grid rule and that claimant also has nonexertional impairments, the ALJ must consider the "intermediate question" of "whether the range of work [the claimant] could perform was so significantly diminished as to require the introduction of vocational testimony." *Bapp*, 802 F.2d at 606.

4

In the present case, the ALJ found that Smith suffered from at least two severe nonexertional impairments: depression and cocaine abuse in partial remission. R. at 14. He also determined that Smith had the residual functional capacity to perform light work, as defined in 20 C.F.R. sections 404.1567(b) and 416.967(b), except that he found that Smith could "remember and carry out at most simple instructions." R. at 18. The ALJ subsequently explicitly questioned whether the grid rules should be applied in Smith's case in light of his nonexertional impairments, and concluded that "the additional limitations have little or no effect on the occupational base of unskilled light work." R. at 20. The ALJ further stated that "[s]ince [the] only additional limitations found above in the claimant's residual functional capacity is consistent with a full range of light work from a mental standpoint, these additional limitations would have no material effect on the occupational base contemplated by [the relevant guide rule]." *Id.*

It is clear that the ALJ's ruling thus includes a considered determination that Smith's nonexertional impairments did not "significantly diminish" his capacity to work such that a vocational expert was needed. Smith argues that the ALJ's explanation of that determination is inadequate. He points to *Lyde v. Colvin*, 2016 WL 53822 (D. Conn. Jan. 5, 2016), where a district court rejected as inadequate an ALJ's statement that the claimant's "limitations have little or no effect on the occupational base of unskilled light work" because that explanation focused on "the Grid's occupational base rather than plaintiff's own limitations." *Id.* at *7. In *Lyde*, however, the claimant's nonexertional limitations were more severe than in the present case—for instance, the *Lyde* ALJ found that the impairments "enable[d] her to perform only 'simple, routine, repetitious work with one or two-step instructions,' and allow her 'only occasional interaction with the public, coworkers, or supervisors.'" *Id.* In Smith's case, by contrast, the

nonexertional limitations at issue—which restricted Smith to carrying out simple instructions—are already taken into account in the grid rules. *See Zabala*, 595 F.3d at 410–11 (allowing application of grid rules for unskilled light work where plaintiff's mental condition restricted her, *inter alia*, to carrying out only simple instructions); *Lewis v. Astrue*, 2012 WL 6097303, at *7 (N.D.N.Y. Dec. 7, 2012)*, aff'd sub nom. Lewis v. Colvin*, 548 F. App'x 675 (2d Cir. 2013) (same); *see also Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013) (in the context of depression, observing that the ALJ determined that the plaintiff could perform the "basic mental demands of unskilled work, such as following simple instructions . . . ").[1]

Thus, the ALJ's decision to rely on the grid rules instead of a vocational expert was appropriate under the statute and regulations.[2]

## B. ALJ's Weighting of Medical Evidence

Smith objects to the ALJ's weighting and consideration of medical evidence provided by five doctors. His objections are generally governed by two standards: the treating-physician rule and the substantial-evidence standard.

First, under the "treating-physician rule," a treating physician's opinion on the issues of the nature and severity of a claimant's impairments is given "controlling weight" if the opinion is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2),

---

[1] Smith cites to 20 C.F.R. sections 404.1569a(c)(1)(iii) and 416.969a(c)(1)(iii) for the proposition that "[n]ot all unskilled jobs involve only simple instructions." Objection at 3. Those regulations, however, simply include a "difficulty understanding or remembering detailed instructions" as an example of a nonexertional limitation. They make no reference to the requirements of unskilled work.

[2] Smith also argues that the ALJ's failure to cite to specific examples of occupations was inappropriate. But that requirement only applies where a vocational expert is needed. *See Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating A Combination of Exertional & Nonexertional Impairments*, SSR 83-14 (S.S.A. 1983).

416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  The

opinion of a treating source will not be afforded controlling weight, however, where the treating

physician "issued opinions that are not consistent with other substantial evidence in the record,

such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.

2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "[T]he less consistent th[e] opinion is with

the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.

1999).

  In circumstances where the treating physician's opinion is not entitled to receive

"controlling" weight, the regulations require the ALJ to consider several factors to determine

how much weight the physician's opinion should receive. *Halloran*, 362 F.3d at 32. Those

factors include: "(i) the frequency of examination and the length, nature and extent of the

treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the

consistency of the opinion with the record as a whole; (iv) whether the opinion is from a

specialist; and (v) other factors brought to the Social Security Administration's attention that tend

to support or contradict the opinion." *Id.*; 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2) – (6).

The ALJ must set forth his or her reasons for the weight assigned to a treating physician's

opinion in the notice of determination.  *Id.*  Failure to provide sufficient reasons for not crediting

the opinion of a claimant's treating physician is a ground for remand. *Sanders v. Comm'r of Soc.

Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008);

*Snell*, 177 F.3d at 133.

  The substantial evidence standard, to reiterate from above, "means once an ALJ finds

facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude*

*otherwise.*" *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation marks and citation omitted) (emphasis in original).

Smith raises weighting issues regarding the following medical opinions.

1.   *Dr. Kogan*

Two 2011 reports written by Dr. Kogan were apparently erroneously omitted from the record before the ALJ. *See* R. at 287 (Smith's appeals brief, stating same); R. at 6 (including the evidence in the Appeals Council record). Smith emphasized Dr. Kogan's findings with respect to his ambulation—both reports state that "without his cane, [Smith] ambulates independently with slow and short steps but otherwise stable gait without focal antaglia or ataxia." R. at 1684; *see also*  R. at 1688 (largely same). Smith asserts that the ALJ's failure to evaluate the reports constitutes a prejudicial error because with the inclusion of those two reports, the ALJ's finding that Smith did not have any limitation in ambulation was not supported by substantial evidence. Objection at 5.

As the Commissioner pointed out in its motion to affirm the initial decision, however, the state agency reviewing medical consultant, Dr. Bernstein, explicitly considered Dr. Kogan's assessment, and the Bernstein report was included in the record before the ALJ. *See* R. at 107 (summary of Dr. Kroger's report, stating that "without cane clt ambulates independently with slow and short steps"). Moreover, as Judge Garfinkel correctly observed, Dr. Kogan's reports do not significantly contradict the ALJ's findings; instead, they are largely in accord with the ALJ's findings, particularly where they state that Smith had a full range of motion in his spine and extremities, full muscle strength and sensation, and that he was able to walk stably and independently without a cane, albeit with slow and short steps. *See* Recommended Ruling at 5; R. at 1684, 1688.

2. *Dr. Buchbinder*

Smith asserts that the ALJ erred by failing to give controlling weight to Dr. Buchbinder, a treating podiatrist, and further argues that the ALJ's explanation regarding why he did not give more deference to Dr. Buchbinder's evidence is inadequate. Objection at 7–11.

Dr. Buchbinder treated Smith from March 28, 2011. R. at 740. On February 12, 2012, he recommended that Smith wear an ankle brace. On December 22, 2012, he provided an opinion stating that Smith could only stand for thirty minutes at a time, that Smith would need to elevate his foot frequently during the work day, and that he was unable to walk on various nonstandard surfaces. R. at 741. The ALJ stated that he was according Dr. Buchbinder's opinion "little weight in light of the findings of Mr. Chu and Dr. Spiro, from virtually the same period of time, indicating the claimant had practically no impairment. The record reflects that Dr. Spiro, in particular, provided care to the claimant on many more occasions than Dr. Buchbinder." R. at 19. The ALJ appears to be referring to post-operative statements form Dr. Spiro observing that Smith had "been walking well," R. at 1043( May 16, 2012), and that he had "normal" heel and toe walking, R. at 1544 (Dec. 7, 2012); 1547 (Jan. 23, 2013). Additionally, a record from Ms. Carter indicates that Smith himself stated that he had pain but "no difficulty ambulating" on March 23, 2011. R. at 1424. The ALJ thus had substantial evidence for his determination that, based on those inconsistencies, Dr. Buchbinder's opinion did not merit the controlling weight ordinarily afforded to a treating physician. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Smith further argues that even if Dr. Buchbinder's opinion was not entitled to controlling weight, the ALJ still failed to evaluate the opinion according to the factors provided in 20 C.F.R. sections 404.1527 and 416.927. Although Smith apparently concedes that the ALJ explicitly considered several of those factors in his findings, including supportability, consistency, and

9

length of treatment, Smith nevertheless asserts that the ALJ failed to consider the specialization factor, described in both regulations as follows:

> We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Smith is correct that the ALJ's findings make no reference to Dr. Buchbinder's specialty, but that omission does not justify a remand. The Second Circuit has held that as long as the ALJ's rationale can be discerned from the record, there is no need for him to have discussed every single one of the above factors in his findings. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (affirming an ALJ's determination that two treating physicians were not entitled to controlling weight where the ALJ "did not expressly discuss the fact that [the treating physicians] were specialists). Here, the ALJ's decision to discount Dr. Buchbinder's opinion was clearly based on the substantial evidence of inconsistencies between his report and that of another more actively-involved treating physician. Accordingly, there is no need to remand on this basis.

3. *Dr. Spiro*

Dr. Spiro began treating Smith for back pain and related symptoms on January 12, 2012. R. at 1038. Dr. Spiro determined that Smith's pain was not improving with "conservative management" on March 28, 2012. R. at 1042. Smith then underwent a surgical procedure that appeared to give relief. *See* R. at 1043 (Smith "state[d] the pain radiating down his legs ha[d] "disappeared" on May 16, 2012); 1540 (Smith was "doing well postoperatively" on September 19, 2012); 1541 (Smith's pain had "significantly improved from before surgery" on November 16, 2012); 1544 ("Lumbrosacral pain was not elicited by motion" on December 7, 2012). In the hearing, the ALJ indicated that he was putting emphasis on Smith's post-surgical recovery, and

10

admitted that prior to the surgery, Smith "may have had more difficulty" with his pain. R. at 60. Smith now asserts that the ALJ improperly discounted Dr. Spiro's pre-surgical assessments, on the theory that the ALJ was required to consider the entire time-period of the claim. Objection at 11.

Judge Garfinkel correctly observed that Smith bears the burden of proving that he has a disability within the meaning of the Act, and that Smith's argument here fails to provide substantial evidence of such a disability dating back to 2004. *See* Recommended Ruling at 6 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013)). When Smith states that the ALJ could not emphasize his post-operative recovery without establishing a "closed period," he is essentially arguing that although he may not have been disabled after the surgery, he is still entitled to benefits from the period between 2004 and 2012. But the ALJ's statements that Smith has highlighted do not prove that the ALJ made a finding that Smith was disabled before the surgery took place and then incorrectly declined to award benefits during that period. Instead, at this stage of the proceedings, the burden remains on Smith to show that no reasonable factfinder could have found otherwise, and he has failed to do so.

### 4. *Dr. Hill*

Dr. Hill, a non-examining state agency psychological consultant, issued an opinion regarding Smith's mental functions on October 5, 2011. R. at 108–09. The ALJ stated that he "relie[d] heavily" on that opinion, observing that "it is not contradicted by any other opinion in the record concerning the claimant's ability to function from a mental standpoint." R. at 18.

Smith argues that the ALJ erred by giving such weight to the opinion of a non-treating physician. Objection at 11–13. But as Judge Garfinkel pointed out, where the non-treating physician's opinion is consistent with substantial evidence in the record, it may properly be

11

afforded significant weight. *See* Recommended Ruling at 5 (citing *Cyr v. Astrue*, 2011 WL 3652493, at *11 (D. Conn. Aug. 19, 2011)). And Judge Garfinkel also correctly distinguished the present case from that of *Butler v. Colvin*, 2014 WL 7338856 (D. Conn. Dec. 22, 2014), where the non-examining doctor's opinion was not entitled to controlling weight because she had not considered "significant" diagnostic evidence. *Id.* at *18.

Smith has failed to identify any contradictions between Hill's opinion and substantial evidence in the record. Accordingly, there is no need to remand on this basis.

5.   *Dr. Finn*

Dr. Finn, a physician who treated Smith for chronic back pain from June 5, 2007 through November 11, 2007, prepared a medical source statement on November 30, 2007 stating that Smith's condition would prevent him from working for twelve months or more. R. at 1094. Smith argues that the ALJ erred by failing to address Dr. Finn's opinion in his findings. Objection at 13.

Judge Garfinkel correctly stated that an ALJ is not required "'to explicitly reconcile every conflicting shred of medical testimony.'"  Recommended Ruling at 6 (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). But even if the ALJ erred in failing to consider Dr. Finn's statement, the error is harmless—at best, it suggests that Smith was disabled in 2007 and 2008, but does not undermine the ALJ's finding that Smith was not disabled after that period. Because Smith first applied for benefits on July 15, 2010, he could only receive back-benefits for the twelve month period before that date. *See* 20 C.F.R. § 404.621 (a)(1).

C.  The RFC Determination

Smith argues that the ALJ made two errors in his RFC determination: (1) the RFC was not assessed on a function-by-function basis, Objection at 14; and (2) the RFC failed to account for Smith's limitations in concentration, persistence, and pace, Objection at 14–17.

Judge Garfinkel correctly disposed of the first argument without much discussion. The Second Circuit has expressly stated that "remand is not necessary merely because an explicit function-by-function analysis was not performed." *Cichocki*, 729 F.3d at 177. Instead, "the relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Id.* Smith has failed to demonstrate the ALJ's findings do not meet those requirements.

Judge Garfinkel also correctly stated that numerous courts have held that "'when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a claimant to only unskilled work sufficiently accounts for such limitations.'" Recommended Ruling at 7 (quoting *Bartell v. Comm'r of Soc. Sec.*, 2014 WL 4966149, at *3 (N.D.N.Y. Sept. 30, 2014) (collecting cases)); *see also Steffens v. Colvin*, 2015 WL 9217058, at *4 (W.D.N.Y. Dec. 16, 2015) (same). Smith does not challenge that reading of the law; instead, his argument attempts to rely on new evidence that the Appeals Council, for reasons discussed below, properly declined to consider. *See* Objection at 15 (citing Dr. Kahn report, R. at 1733).

D.  Drug Addiction

Smith argues that the ALJ erred by failing to follow the Social Security Ruling that addresses how to evaluate cases involving drugs and alcoholism ("SSR 13-2p"). *Titles II & XVI:*

*Evaluating Cases Involving Drug Addiction & Alcoholism (DAA)*, SSR 13-2P (S.S.A. Mar. 22,

2013); *see* Objection at 17. As Judge Garfinkel correctly pointed out, SSR 13-2p states that:

> Under the Act and our regulations, we make a DAA materiality
> determination only when:
>
> i. We have medical evidence from an acceptable medical source
> establishing that a claimant has a Substance Use Disorder, and
>
> ii. We find that the claimant is disabled considering all impairments,
> including the DAA.

SSR 13-2p at § (b)(3)(a). Accordingly, here there was no need to make a materiality

determination because the ALJ did not find that Smith was disabled, even taking into account the

impairments caused by his cocaine addiction.

Smith also argues that the ALJ improperly used Smith's substance abuse problems to

undermine his credibility. Objection at 17–19. Smith rightly states that a claimant's drug abuse

does not inherently reduce his credibility. *Id.* at 17–18 (quoting SSR 13-2p § (b)(10)). In this

case, however, the ALJ relied on specific evidence of Smith's lack of credibility in the record,

including numerous reports of inconsistencies particularly with respect to Smith's need for pain

medication. R. at 19. The ALJ's credibility assessments thus cannot be said to be "patently

unreasonable." *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d

Cir. 1997) (quotation marks and citation omitted).[3]

E.  New and Material Evidence

On October 29, 2013, Smith submitted new medical evidence to the Appeals Council. *See*

R. at 1690–1745. That evidence consisted of mental health records from Connecticut

Renaissance Center, where Smith was admitted on April 12, 2011, discharged on April 25, 2011,

---

[3] Smith also submitted the newly issued SSR 16-3p, which provides guidance about to how evaluate subjective symptoms, as supplemental authority. (doc. 43) That guidance has not been made retroactive, and accordingly does not apply to this case.

and readmitted on October 11, 2013, as well as a statement from his treating physician for the

latter period. *Id.* The Appeals Council declined to consider the evidence under 20 C.F.R. section

405.401(c). R. at 2. Smith now argues that: (1) the evidence did meet those requirements; (2) the

regulation is invalid because it was improperly promulgated; and (3) the regulation is

inconsistent with the Social Security Act.[4] Objection at 19–29.

    1. *20 C.F.R. § 401.405(c) Applied*

20 C.F.R. section 405.401(c) provides:

> If you submit additional evidence, the Appeals Council will consider the
> additional evidence only where it relates to the period on or before the
> date of the hearing decision, and only if you show that there is a
> reasonable probability that the evidence, alone or when considered with
> the other evidence of record, would change the outcome of the decision,
> and
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that
> prevented you from submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond
> your control prevented you from submitting the evidence earlier.

Smith's new evidence does not meet those requirements. First, some of the evidence does not

relate to the period on or before the date of the ALJ hearing, which took place on March 19,

2013. R. at 12. The remainder, as Judge Garfinkel observed, both fails to provide a reasonable

probability of a new outcome, and moreover is not justified by one of the reasons enumerated in

the regulation. Recommended Ruling at 10. Smith's bare assertion that his "severe mental

impairment prevented him from remembering his 2011 treatment" until his readmission, without

---

[4] Smith also argues that the regulation is inconsistent with new Social Security regulations imposing an on-going
duty on claimants to submit "all evidence known to you that relates to whether you are blind or disabled" at each
level of the review process. 20 C.F.R. §§ 404.1512(a); 416.912(a). Requiring a claimant to submit all evidence,
however, is not equivalent to requiring all adjudicators to accept it, particularly when the submission of evidence has
been delayed without good cause. Moreover, those regulations were made effective on April 20, 2015, and thus do
not apply to the October 15, 2014 Appeal Council decision in this case.

more, is inadequate to constitute a "mental . . . limitation that prevented [him] from submitting the evidence earlier."

2.  *Promulgation of 20 C.F.R. § 405.401(c)*

Smith argues that 20 C.F.R. § 405.401(c) is invalid because the Commissioner did not follow notice and comment procedures when it was promulgated. In particular, he asserts that the final rule was not a "logical outgrowth" of the proposed rule. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174 (2007).

On March 31, 2006, the Social Security Administration published final rules implementing an experimental procedure for disability claims in the Boston region, which includes Connecticut. 71 Fed. Reg. 16424-01 (Mar. 31, 2006). Those rules permitted an ALJ to consider new evidence submitted after the ALJ's decision had been issued under certain circumstances as follows:

> The administrative law judge will accept the evidence if you show that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision, and:
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

20 C.F.R. § 405.373(b) (2006). The Decision Review Board, which functioned as the appellate body, would also consider new evidence subject to the same conditions. *See id.* § 405.373(d).

On December 4, 2009, the Social Security Administration issued a notice of proposed rulemaking proposing stating that it was planning to eliminate the special rules in the Boston region and to restore the same rules used for the rest of the country. 74 Fed. Reg. 63688-01 (Dec.

16

4, 2009). The final rules did replace the Decision Review Board with the Appeals Council, but retained some aspects of the special procedure for initial ALJ hearings in the Boston region. 74 Fed. Reg. 24802-01 (May 3, 2011). Accordingly, the final rules included some differences for the Appeals Council procedures in the Boston region to accommodate the differences at the ALJ hearing level. *Id.* Those differences included 20 C.F.R. § 405.401(c), which eliminated the rule that allowed the ALJ to consider new evidence after the hearing, but retained for the Appeals Council substantially similar standards[5] to those that had governed both the ALJ and the Decision Review Board.

The final rule was thus not unprecedented or unforeseeable—it was an almost verbatim retention of the old standards, simply shifted from the old appellate body to the new one. Functionally, the promulgation of section 405.401(c) was a means for the agency *not* to make the proposed change. And the decision not to adopt a proposed rule has been deemed to meet the "logical outgrowth" test. *See New York v. E.P.A.*, 413 F.3d 3, 44 (D.C. Cir. 2005); *Am. Iron & Steel Inst. v. U.S. E.P.A.*, 886 F.2d 390, 400 (D.C. Cir. 1989). Accordingly, there was no defect in the notice.

### 3.   *Interaction between Regulation and Statute*

Smith also argues that section 405.401 is inconsistent with the Social Security Act because it improperly narrows the duty of the ALJ and the Appeals Council to develop the record. Objection at 27; *see also Judge v. Comm'r of Soc. Sec.*, 2013 WL 785522, at *7 (N.D.N.Y. Feb. 1, 2013), *report and recommendation adopted,* 2013 WL 785641 (N.D.N.Y.

---

[5] The sole difference between the two rules is that section 405.401(c) allows the Appeals Council to consider new evidence "only where it relates to the period on or before the date of the hearing decision." Smith does not make any arguments about the unforeseeability of that change, and indeed he cannot do so given that the limitation is identical to that in section 416.1470, which governs the Appeals Council's consideration of new evidence in the rest of the country. *See Orriols*, 2015 WL 5613153, at *3.

Mar. 1, 2013) ("Both the ALJ and the Appeals Council have an affirmative obligation to develop the administrative record.").

But the duty to develop the record is not unlimited; moreover, it, too, is delineated in the Commissioner's regulations, rather than in the text of the statute itself. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (observing that the duty to develop the record is described by 20 C.F.R. §§ 404.1512(d) and 404.1512(e)). Section 405(a) of the statute itself instructs the Commissioner to adopt "reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder." 42 U.S.C. § 405(a). To read *any* limitation on the Appeals Council's ability to accept post-hearing evidence, including the relatively modest requirements of section 405.401(c), as being inconsistent with the statute would thus render 42 U.S.C. section 405(a) useless. And Smith's argument fails to identity with any specificity how section 405.401(c) is unreasonable or otherwise actually inconsistent with the statute itself.

F.  Credibility Assessments

Smith raises objections to two of the ALJ's credibility determinations: (1) he asserts that the ALJ erred by not using a medical expert to decipher tests finding no evidence of opiates in Smith's bloodstream, which the ALJ used as evidence that Smith was not actually taking the pain medications he was prescribed, Objection at 30; and (2) the ALJ erred by failing to make any credibility finding at all regarding Erskine, a caseworker and witness, Objection at 31.

1.  *Decision not to use a medical expert*

The ALJ stated in his findings that he found Smith's testimony regarding his "reports of pain requiring medication to be at most partially credible." R. at 15–16. To arrive at that

18

conclusion, the ALJ noted "numerous drug urinalysis tests, generally from the periods of time in which [Smith] sought and was prescribed [opiate pain] medication , in which he tested negative for the presence of opiates in his system, yet positive for cocaine." R. at 15. The ALJ also noted two requests for pain medication that were not granted by physicians, as well as one statement by Smith that he would leave the hospital where he had been admitted only if he were prescribed Percocet. *Id.*

Smith argues that the ALJ's credibility determination is not supported by substantial evidence because the ALJ was not qualified to interpret the test results, and should have instead consulted a medical expert. As the Commissioner points out, however, even assuming that Smith is correct, he has failed to show that no reasonable factfinder would have found his testimony regarding his need for pain medication wholly credible in light of the other indications of drug-seeking behavior in the record and cited by the ALJ. *See, e.g.*, R. at 1424, 1547; *see also Sears v. Astrue*, 2012 WL 1758843, at *5 (D. Vt. May 15, 2012) (affirming the ALJ's consideration of claimant's drug-seeking behavior in assessing the true severity of his pain, and collecting cases holding same).

### 2.  *Erskine's Credibility Assessment*

Smith's objection regarding Erskine is also inadequate. An ALJ is not required "to explicitly reconcile every conflicting shred of medical testimony" in his findings, *Miles*, 645 F. 2d at 124, let alone every statement from every non-medical witness proffered by the claimant. Smith's citation to SSR 96-7p is also inapposite—that policy statement discusses how an ALJ should determine the credibility of a claimant's statements about his own pain, rather than the credibility of statements made by other witnesses. *See Titles II & XVI: Evaluation of Symptoms*

*in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A.

July 2, 1996).

**IV.     Conclusion**

For the foregoing reasons, the Recommended Ruling of January 4, 2016 (doc. 39) is

ADOPTED in full. The decision of the Commissioner is AFFIRMED.

So ordered.

Dated at Bridgeport, Connecticut, this 23rd day of March 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge